IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

OAK STREET PRINTERY, LLC,        :        CIVIL ACTION NO. **3:CV-12-0096**
                                 :
              Plaintiff          :        (Judge Mariani)
                                 :
              v.                 :        (Magistrate Judge Blewitt)
                                 :
FUJIFILM NORTH AMERICA CORP.,    :
                                 :
              Defendant          :

## REPORT AND RECOMMENDATION

## I. PROCEDURAL BACKGROUND

On December 19, 2011, Plaintiff Oak Street Printery, LLC, d/b/a/ Global Print & Design

filed a Complaint against Defendant Fujifilm North America Corp in the Court of Common Pleas

of Luzerne County, Pennsylvania, which was docketed as No. 15600-Civil-2011. (Doc. 1, p. 7).

In the Complaint, Plaintiff asserts that it is "a duly organized Pennsylvania S-corporation" with

a principal address in Old Forge, Pennsylvania. (*Id.*). Plaintiff further asserts that Defendant is

"a duly organized business entity authorized to sell printing equipment and equipment services

in Pennsylvania, with an office address [in] Edison, [New Jersey]." (*Id.*).

Defendant asserts that on December 27, 2011, it received a copy of Plaintiff's Complaint

via certified mail. (*Id.*).

On January 17, 2012, Defendant removed this suit from the Court of Common Pleas of

Luzerne County, Pennsylvania, to the United States District Court for the Middle District of

Pennsylvania. (Doc. 1, p. 1). In its Notice of Removal, Defendant asserts that Plaintiff is "a

citizen of Pennsylvania," as Plaintiff submitted in its Complaint. (Doc. 1, p. 1 (citing Compl. at ¶ 1)). However, Defendant also submits that it is not incorporated in Pennsylvania nor is its principal place of business in Pennsylvania; thus, Defendant "is not a citizen of Pennsylvania." (Doc. 1, p. 1). Defendant also asserts that while the Complaint "does not allege the specific amount of monetary damages sought," the amount in controversy exceeds $75,000 because Plaintiff "seeks to recover actual and consequential damages including but not limited to loss of business income as well as loss of future business income and earning capacity." (Doc. 1, p. 2 (citing Comp. at ¶¶ 21, 28, 35)). Thus, Defendant maintains that this federal Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) and that, because Defendant filed its Notice of Removal within thirty (30) days of its receipt of Plaintiff's Complaint, this action is removable to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1, p. 2).[1]

On January 24, 2012, Defendant filed a Motion to Dismiss/Transfer requesting that this Court transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a) as well as dismiss "Count I" (Negligence) of the Complaint. (Doc. 4, pp. 1, 2). Defendant asserts that Plaintiff filed this action "contrary to an enforceable forum selection clause"; thus, Defendant maintains that this case should be transferred to the

---

[1] Assuming Defendant's assertion that it is not a citizen of Pennsylvania is correct, Defendant properly submits that this Court has federal jurisdiction over this action pursuant to its diversity of citizenship jurisdiction from 28 U.S.C. § 1332, as the parties are citizens of different states, and the amount in controversy likely exceeds $75,000.

Further, Defendant has properly removed this action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 because this Court would have original jurisdiction pursuant to § 1332, the Middle District of Pennsylvania is the district in which this action was pending, and Defendant removed this suit within 30 days of receiving the Complaint, a copy of which was attached to its Notice of Removal.

Southern District of New York, the forum referenced in the forum selection clause. (Doc. 4, p. 2).[2] Defendant also requests that this Court dismiss with prejudice Plaintiff's negligence claim against Defendant pursuant to Federal Rule of Civil Procedure 12(b)(6). (*Id.*).[3]

On February 7, 2012, Defendant filed a Brief in Support of Defendant's Motion to Dismiss/Transfer. (Doc. 5). With its Brief, Defendant also filed a Declaration of Vincent N. Avallone, Defendant's attorney, attached to three unpublished opinions pursuant to Local Rule 7.8(a), which states that "[a] copy of any unpublished opinion which is cited must accompany the brief as an attachment." (Doc. 5-1).

On February 10, 2012, Plaintiff filed a Brief in Opposition to Defendant's Motion to Dismiss/Transfer (Doc. 6) along with an Affidavit of David J. Selingo, Plaintiff's attorney, which asserts that Mr. Selingo personally accessed the terms and conditions section of the  fuji film website. (Doc. 6-1, p. 1). Attached to Plaintiff's Brief and Affidavit are four exhibits to demonstrate how to access Defendant's Terms and Conditions of Sale on the website referenced. (Doc. 6-1, pp. 3-15). Also on February 10, 2012, Plaintiff filed a Response to Defendant's Motion to Dismiss/Transfer admitting and denying Defendant's various factual assertions. (Doc. 7).

---

[2] Section 1404(a) reads: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

[3] Federal Rule of Civil Procedure 12(b)(6) reads: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: [ ] (6) failure to state a claim upon which relief can be granted."

On February 24, 2012, Defendant filed a Reply Brief in Further Support of Defendant's Motion to Dismiss/Transfer. (Doc. 10). With its Reply Brief, Defendant also filed a Reply Declaration of Wayne Heading, Defendant's Director of Accounting, with one exhibit. (Doc. 10-1). Defendant additionally filed a Reply Declaration of Vincent N. Avallone with two unpublished opinions as exhibits, pursuant to Local Rule 7.8(a).[4]

On April 3, 2012, District Judge Mariani ordered that Defendant's Motion to Dismiss Transfer be referred to the undersigned for a Report and Recommendation. (Doc. 14).

## II. FACTUAL BACKGROUND

The Complaint asserts that on January 24, 2011, Plaintiff Global Print found water damages to its property on Oak Street in Old Forge, Pennsylvania, after a water pipe burst. (Doc. 1, pp. 7, 8). Because of the water pipe bursting, damage resulted to the building as well as multiple supplies, furniture, and equipment. (Doc. 1, p. 8). Plaintiff then notified its insurance carrier, State Auto Insurance Companies ("State Auto"), that there was a potential claim and "began the process of cleanup and remediation." (*Id.*).

Plaintiff alleges that it found standing water on its Dart Luxel T6000CTP (Model PT-RT40000 recording unit) and Luxel T6000CTP II Single Auto Loader ("Luxel Equipment") and was "concerned as to whether it suffered any water damage." (*Id.*). Before January 24, 2011, Plaintiff claims that it employed Defendant to "service and upgrade [its] Luxel Equipment," as it purchased the equipment from Defendant, "through an independent supplier." (*Id.*).

---

[4] "A copy of any unpublished opinion which is cited must accompany the brief as an attachment." U.S.Dist.Ct.Rules M.D. Pa., LR 7.8(a).

Plaintiff asserts that it "was under the impression" that Defendant manufactured the Luxel Equipment, and, as a result, Plaintiff engaged Defendant to inspect the equipment after the discovery of standing water. (*Id*.). Plaintiff avers that Defendant charged $1,590.00 for the inspection and opinion "on repair versus replacement." (*Id*.). The invoice is dated February 24, 2011. (Doc. 1, p. 16; Doc. 5, p. 2).[5]

On January 28, 2011, the Luxel Equipment was inspected by: Heather Shive ("Shive"), State Auto's claim handler; Roy Winter ("Winter"), a representative from LWG Consulting ("LWG"); and Dan Coon ("Coon"), a representative from Defendant. (*Id*.). After this inspection, LWG, an engineering firm hired by State Auto, "advised that the Luxel Equipment was repairable with disassembly, cleaning and reassembly" and that "the repair/cleaning process would take several days, at the end of which Global Print would have a fully functioning piece

---

[5] In its Brief, Defendant points out that the invoice sent to Plaintiff states: "This Invoice incorporates and is subject to the applicable Terms and Conditions of Sale located at www.fujifilmusa.com/termsandconditions/." (Doc. 5, p. 2) (citing Compl., ¶ 8 (Pl.'s Ex. A)).
The Defense further submits that a clause in those reference Terms and Conditions of Sale reads:

> The validity, construction and performance of these Terms and Conditions and the Contract formed between the parties shall be governed by the laws of the State of New York (without giving effect to its principles of conflict of laws). Buyer by submitting an order for Products and/or Services or otherwise entering into a Contract with Vendor irrevocably and unconditionally submits and waives any objection to the jurisdiction of the federal and state courts located in Westchester County, New York for purposes of any suit, action or proceeding arising out of or relating to these Terms and Conditions or the Contract formed between the parties and agrees to take any and all future action necessary to submit to the jurisdiction of such courts.

(Doc. 5, pp. 2-3) (citing "Heady Decl.," Def.'s Ex. A, at 6).

of equipment." (Doc. 1, p. 9; Doc. 6, p. 2).

In an e-mail dated January 31, 2011, Coon suggested that while "everything worked" during the inspection on January 28, "water was discovered when the 'path went down the drum.'" (Doc. 1, p. 9). Coon recommended that the Luxel Equipment be "cleaned, decontaminated and restored." (*Id.*).

In a response to the e-mail referenced above, the Regional Support Manager for Defendant, Mike Wilson ("Wilson"), sent a reply e-mail to Coon also on January 31, 2011, that read: "Do NOT do any additional work on this unit now. We have had problems with water damaged equipment in the past and have not been successful in restoring it to operational condition. We will discuss this week and then make a decision if we will work on it." (*Id.*). Wilson sent another e-mail dated February 7, 2011, to LWG and State Auto that stated:

> Our experience has taught us that while the dart may be cleaned, dried and reassembled, the effects of water on the components, motors, metal drum, frame and power supplies creates corrosion over time and the components eventually fail. [I]t's <u>impossible to eliminate the damage water does to the dart and SAL</u> [Luxel Equipment].

(*Id.*) (alterations in Compl.).

As Defendant's representative, Wilson "advised both LWG and State Auto that the Luxel Equipment was recommended as a total loss and should be replaced." (*Id.*).

Defendant suggested replacing the Luxel Equipment for approximately $122,000.00; however, State Auto, relying on LWG's opinion, pushed for the "disassembly, cleaning and reassembly" of the equipment for $33,716.00. (*Id.* at 10). Plaintiff claims that it relied upon Wilson's opinion as "its contracted expert" to advise "on repair versus replacement" and, as

such, "refused to agree to the work proposed by LWG." (*Id.*). Because LWG required Defendant's services to ensure proper calibration of the equipment after it was reassembled, further delay resulted, as Defendant "refused to participate." (*Id.*).

Eventually, Plaintiff asserts, Defendant "demanded a Hold Harmless Agreement relative to the disassembly, cleaning and reassembly of the Luxel Equipment due to [Defendant's] continued opinion that the Luxel Equipment could not be repaired." (*Id.*). State Auto employed counsel to draft a Hold Harmless Agreement ("HHA"), which was prepared to be signed by Plaintiff, Defendant, LWG, and State Auto. (*Id.*). The HHA included the following:

> FujiFilm North America Corp., Graphic Systems Division, has advised Oak Street Printery, L.L.C., d/b/a Global Print & Design, State Auto Property & Casualty Insurance Company, and LWG Consulting that, in the opinion of FujiFilm North American Corporation, due to the effects of water on the Equipment, it may be impossible to eliminate all the damage water did to the equipment.

(*Id.*).

On February 15, 2011, State Auto forwarded the HHA to all of the parties involved, requesting that everyone execute the HHA before repairs began on the Luxel Equipment. (*Id.*). Plaintiff asserts that Defendant never signed the HHA. (*Id.*).

Plaintiff also refused to sign the HHA after counsel so advised because the agreement was "an extra contractual requirement, outside of the scope of its insurance policy with State Auto" and because of Defendant's "continued opinion that the Luxel Equipment could not be restored and was required to be replaced." (*Id.* at 11).

Plaintiff claims that after eight months of being unable to operate its business "due to the difference of opinion over the repair versus replacement of the Luxel Equipment," it "closed its

doors for good on September 1, 2011." (*Id.*). Plaintiff asserts that Global Print was "the primary source of income" for its principals, Charles Burke ("Burke") and Linda Solt. (*Id.*).

On November 28, 2011, Wilson testified under oath that his opinion that the Luxel Equipment was not repairable had changed and that he had since become "uncertain as to whether the Luxel Equipment [could] be cleaned, restored and repaired following water intrusion." (*Id.*). Wilson also testified that he never informed Plaintiff of his changed opinion, "despite the fact that Global Print had hired Fuji for its expert analysis and opinion and the fact that Global Print was relying on [his] opinion that the Luxel Equipment needed to be replaced." (*Id.*).

On February 24, 2011, twenty-seven days after the representatives from Defendant, State Auto, and LWG inspected Plaintiff's Luxel Equipment, Defendant sent its invoice for the inspection to Plaintiff. (Doc. 6, p. 3; Doc. 1, p. 16). Plaintiff asserts that "[a]t the bottom of this invoice, in small print, a reference is made to the incorporation of Terms and Conditions of Sale that can be found at www.fujifilmusa.com/termsandconditions/. (Doc. 6, p. 3). Plaintiff maintains that the invoice did not indicate a spot for a signature "or any other form of positive indicia" that would have allowed it to assent to the Terms and Conditions of Sale. (*Id.*).

Plaintiff alleges that when the aforementioned Internet address is accessed, the user must choose between 'Terms and Conditions of Sale' or 'Terms and Conditions of Purchase.' (*Id.*). If Terms and Conditions of Sale is chosen, the user must then choose between twelve Fuji companies. (*Id.* at 3-4). If the user chooses the Defendant-corporation, Fujifilm North America, from the list, he or she must then choose "between two time periods." (*Id.* at 4). Plaintiff

submits: "[o]nly if the correct time period is chosen does the customer finally get to the Terms and Conditions of Sale relied upon by Fuji here to for the forum selection clause." (*Id.*).

Defendant asserts that on December 14, 2011, Burke, a principal of Plaintiff Global Print remitted payment in the form of check to Defendant. (Doc. 10, pp. 1, 2). Defendant's exhibit to its Reply Brief (Doc. 10-1, p. 5) is allegedly a copy of this check made out for $1,590.00 and shows that the phrase "Doc No. 901089587," the document number on the invoice, is written in the memo section of the check. (See Doc. 10, p. 2). Defendant avers that with this check, there was also enclosed a copy of page two of the invoice in question that was "initialed 'CFB' and marked 'Paid, Ck #349' immediately above the language containing the Terms and Conditions website address." (*Id.*; Doc. 10-1, p. 4).

## III. ALLEGATIONS OF COMPLAINT

Plaintiff makes two claims in its Complaint against Defendant: (1) that Defendant was negligent causing Plaintiff to suffer loss of income; and (2) that Defendant breached its contract with Plaintiff. (*Id.* at 12-13).

Plaintiff asserts that Defendant "had a duty, established by contract, to provide [ ] an accurate opinion concerning repair versus replacement of the Luxel Equipment" and that Defendant breached that duty when it neglected to inform Plaintiff of its changed opinion favoring repair over replacement before Plaintiff closed its business operations (*Id.* at 12). Plaintiff avers that "[a]s a direct and proximate result of Defendant's [ ] careless and negligence conduct, [Plaintiff] suffered a loss of business income and future business income/earning capacity." (*Id.*).

As relief on its negligence claim, Plaintiff requests judgment against Defendant "in an amount in excess of the mandatory arbitration limits of Luzerne County, together with costs and interest and all other relief this Court deems just and proper." (*Id.*).

Plaintiff additionally asserts that Defendant failed to provide "a fair, objective evaluation and investigation" of Plaintiff's Luxel Equipment, and, thus, Defendant "breached its contractual obligations" to Plaintiff because Defendant "placed it own financial interest" before Plaintiff's in trying to effectuate a sale of new equipment. (*Id.* at 13). Plaintiff avers that it has performed all of its own obligations under the contract at issue, "including, but not limited to, all conditions precedent and all conditions subsequent." (*Id.*). Plaintiff claims that Defendant, "through its agents, servants, employees and representatives," was negligent in its conduct, which caused Plaintiff to suffer "substantial financial loss." (*Id.*). Plaintiff further maintains that it will continue to suffer pecuniary loss "[a]s a direct and proximate result of Defendant's [ ] misconduct." (*Id.*).

Plaintiff submits that Defendant breached its contractual obligations to Plaintiff by: (1) "failing to honor the terms of the contract it entered into with Global Print"; and (2) "failing to complete its obligations under the contract." (*Id.*).

As relief on its breach of contract claim, Plaintiff request judgment against Defendant and actual and consequential damages "in an amount in excess of the mandatory arbitration limits of Lackawanna County, together with costs, interest and attorneys fees and all other relief this Court deems just and proper." (*Id.* at 13-14).

## IV. MOTION TO TRANSFER STANDARD

A court may transfer any civil action for the convenience of the parties or witnesses, or

in the interests of justice, to any district where the action might have been brought. 28 U.S.C.

§ 1404(a). Title 28 U.S.C. § 1391(b) provides that:

> A civil action may be brought in – (1) a judicial district in which any defendant
> resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part of property that is the subject of
> the action is situated; or (3) if there is no district in which an action may
> otherwise be brought as provided in this section, any judicial district in which any
> defendant is subject to the court's personal jurisdiction with respect to such
> action.

See also Kwok Sze v. Pui-Lung Pang, Civil Action No. 1:CV-12-0619, 2012 WL 2061456, at *8

(M.D. Pa. Apr. 25, 2012) (citing Vangura Kitchen Tops, Inc. v. C & C North America, Inc., 2008

WL 4540186, 2008 WL 4540186, at *3 (W.D. Pa. Oct. 7, 2008); Eppard v. Certergy Payment

Recovery Services, Inc., Civil No. 09-1414, M.D. Pa., 2-23-10 Memorandum).

This Court has stated:

> "It is well settled that a court may transfer any civil action for the convenience of
> the parties or witnesses, or in the interest of justice, to any district where the
> action might have been brought. 28 U.S.C. § 1404(a). The United States
> Supreme Court in Hoffman v. Blaski, 363 U.S. 335, 343, 80 S.Ct. 1084, 4 L.Ed.2d
> 1254 (1960)[,] recognized that under § 1404(a), a civil action may be transferred
> by a district court to another district court where that action may have been
> brought by the plaintiff."

Kwok Sze, 2012 WL 2061456, at *8 (quoting Hankins v. Beard, Civil No. 3:CV-06-2372, 2008

WL 2950996, at *10 (M.D. Pa. July 29, 2008)).

This Court has further held:

> "'[T]he purpose of [§ 1404(a)] is to prevent the waste of time, energy, and money
> and to protect litigants, witnesses and the public against unnecessary
> inconvenience and expense.' [Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)]
> (internal quotations omitted). Although the court has discretion to transfer venue,
> 'a motion to transfer is not to be liberally granted.' Measurement Specialties, Inc.

> *v. Stayhealthy.com*, 275 F. Supp. 2d 638, 640 (E.D. Pa. 2003)."

*Kwok Sze*, 2012 WL 2061456, at *8-9 (*quoting Brown v. Maue*, No. Civ. 1:CV-04-2646, 2005
WL 1420776, at *1 (M.D. Pa. June 15, 2005)) (second alteration in original).

Federal courts within the Third Circuit have held that burden of proving the need for a
transfer is on the moving party. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).
After determining whether the action could have been brought in the proposed district for
transfer, this Court then considers the following non-exhaustive list of factors in evaluating
whether to transfer the case:

    (1)    the plaintiff's choice of forum;

    (2)    the defendant's preference;

    (3)    where the claim arose;

    (4)    the convenience of the parties ... and of the witnesses, but only to the
            extent that the witnesses may actually be unavailable for trial in one of the
            fora;

    (5)    the location of books and records, similarly limited to the extent that the
            files could not be produced in the alternative forum;

    (6)    the enforceability of the judgment;

    (7)    practical considerations that could make the trial easy, expeditious, or
            inexpensive;

    (8)    the relative court congestion in the competing courts;

    (9)    the local interest in deciding local controversies at home;

    (10)    the public policies of the fora;

    (11)    and the familiarity of the trial judge with the applicable state law.

*Brown*, 2005 WL 1420776, at *2 (*citing Jumara*, 55 F.3d at 879-80).

However, the movant "is not required to show truly compelling circumstances for ...

change ... [of venue, but rather that] all relevant things considered, the case would be better off

transferred to another district." *Brown*, 2005 WL 1420776, at *2 (alteration in original) (*quoting*

*In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (internal quotation marks omitted).

## V. MOTION TO DISMISS STANDARD

In *Reisinger v. Luzerne County*, 712 F. Supp. 2d 332, 343-344 (M.D. Pa. 2010), this

Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard
> applicable to a motion to dismiss in light of the United States Supreme Court's
> decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167
> L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, [556] U.S. [662], 129 S.Ct. 1937, 173
> L.Ed.2d 868 (2009).
>
> > "[T]o survive a motion to dismiss, a complaint must contain sufficient factual
> > matter, accepted as true to 'state a claim that relief is plausible on its face.'"
> > *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).
> > The Court emphasized that "only a complaint that states a plausible claim for
> > relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued,
> > "[d]etermining whether a complaint states a plausible claim for relief will ...
> > be a context-specific task that requires the reviewing court to draw on its
> > judicial experience and common sense." *Id.* (citation omitted).
>
> *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009). The Circuit Court
> discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for
> district courts presented with a motion to dismiss for failure to state a claim in a
> case filed just a week before *McTernan, Fowler v. UPMC Shadyside*, 578 F.3d 203
> (3d Cir. 2009).
>
> > [D]istrict courts should conduct a two-part analysis. First, the factual and legal
> > elements of a claim should be separated. The District Court must accept all
> > of the complaint's well-pleaded facts as true, but may disregard any legal
> > conclusions. [*Iqbal*, 129 S.Ct. at 1949.] Second, a District Court must then
> > determine whether the facts alleged in the complaint are sufficient to show

that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips* [*v. Co. of Allegheny*], 515 F.3d [224,] 234-35 [ (3d Cir. 2008) ]. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, 346 Fed.Appx. 774, 776 (3d Cir. 2009) (*quoting Twombly*, 550 U.S. at 555, 127 S.Ct. 1955) (not precedential).

## VI. DISCUSSION

### A. Motion to Transfer

As stated, on January 24, 2012, Defendant filed a Motion to Transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404. (Doc. 4). On February 7, 2012, Defendant filed a Brief in Support of Defendant's Motion to Transfer. (Doc. 5).[6] Defendant asserts that Plaintiff filed this suit "contrary to a forum selection clause," which requires any action resulting from the contract at issue to be brought in a "state or federal court located in Westchester County, New York." (Doc. 5, p. 1).

In its Brief in Support, the Defense maintains that "[t]he United States Supreme Court

---

[6] Defendant filed its Brief properly pursuant to Local Rule 7.5, which requires a brief in support of any motion to be filed within fourteen days after the motion was filed. U.S.Dist.Ct.Rules M.D. Pa. LR 7.5.

has endorsed the use of transfer pursuant to 28 U.S.C. § 1404(a) where, as here, a party seeks to enforce a forum selection clause. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)." (Doc. 5, p. 7). Defendant asserts that the factors this Court should consider "include convenience to the parties and witness, as well as the interests of justice." (Doc. 5, p. 7) (*citing Stewart*, 487 U.S. at 29).

Defendant's Brief further states that "[a] forum selection clause is a 'significant factor' and a substantial consideration that 'figures centrally' in the Court's assessment of the appropriateness of transfer." (Doc. 5, p. 7) (*quoting Stewart*, 487 U.S. at 29) (*citing Jumara*, 55 F.3d at 879).[7] The Defense avers that:

> A forum selection clause is presumptively valid and enforceable unless the objecting party establishes that (1) it results from fraud or overreaching; (2) enforcement would violate strong public policy of the forum; or (3) enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L.Ed.2d 513 (1972); *Moneygram Payment Systems, Inc. v. Consorcio Oriental, S.A.*, 65 Fed. Appx. 844, 847 (3d Cir. 2003).

---

[7] The *Stewart* Court held:

> A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance of a number of case-specific factors. The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus. In its resolution of the § 1404(a) motion in this case, for example, the District Court will be called on to address such issues as the convenience of a Manhattan forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power. The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their venue preferences.

487 U.S. at 29-30.

(Doc. 5, p. 8).[8]

Defendant claims that the party in opposition to the Motion to Transfer "bears a heavy burden" to demonstrate "not only that the balance of convenience is strongly in favor of another forum but also that resolution in the selected forum will be 'so manifestly and gravely inconvenient' that it will be effectively deprived of its day in court." (Doc. 5, p. 8) (*quoting and citing Zapata*, 407 U.S. at 19).

The Defense then submits the various "private and public 'Jumara' factors" for the Court's consideration. (Doc. 5, p. 8) (*citing Jumara*, 55 F.3d at 879). Defendant alleges that the private factors include: (1) "the parties' preferences"; (2) "'the convenience of the parties as indicated by their relative physical and financial condition'"; (3) "the unavailability of witnesses for trial"; and, (4) " the situs of books and records." (Doc. 5, p. 8) (*quoting and citing Jumara*, 55 F.3d at 879). Defendant asserts that the respective public interests include: (1) "the enforceability of the judgment"; (2) "factors that could make the trial easier, more expeditious, or less expensive"; (3) "relative administrative difficulties pertaining to court congestion"; (4) "'the local interest in deciding local controversies at home'"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with applicable state law in diversity cases." (Doc. 5,

---

[8] The *Zapata* Court held: "[O]ther courts are tending to adopt a more hospitable attitude toward forum-selection clauses. This view ... is that such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. at 10.

The Third Circuit held in *Moneygram*: "[T]he mere allegation of fraudulent conduct does not suspend operation of a forum selection clause. Rather, the proper inquiry is whether the forum selection clause is the result of 'fraud in the inducement of the [forum-selection] clause itself.'" 65 F. App'x at 847 (*quoting and citing Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)).

pp. 8-9) (*quoting and citing Jumara*, 55 F.3d at 879).

Defendant argues that the Terms and Conditions of Sale on the Internet address listed printed on the Invoice sent to Plaintiff designate that the forum of choice for suits brought against Fujifilm is federal or state court in Westchester County, New York. (Doc. 5, p. 9). The Defense then cites three opinions in support of transferring the case:

> *See Schwartz v. Comcast Corp.*, 2007 WL 4212693 (3d Cir. Nov. 30, 2007) (holding that a customer on notice of contract terms available on the interest website is bound by those terms). *Cf. Feldman v. Google, Inc.*, 513 F.Supp.2d 229, 236 (E.D.Pa.2007) (noting, in considering enforceability of terms available for review on internet site, that under "traditional principles of contract law," focus is "whether the plaintiff had reasonable notice of and manifested assent to ... agreement"); *Pentecostal Temple Church v. Streaming Faith, LLC*, Civil Action No. 08-554, 2008 WL 4279842, at *6 (W.D. Pa. Sept. 16, 2008) (ordering transfer of venue pursuant to 28 U.S.C. § 1404(a) owing to parties' contractual agreement to an enforceable forum selection clause set forth on website).

(Doc. 5, p. 9).

Defendant asserts that the forum selection clause should be given "significant weight" in determining whether to transfer this action and that proceeding in New York would not be "gravely unjust to plaintiff so as to deprive it of its day in court." (*Id.*).

Defendant concludes this Court should transfer the case at bar because the *Jumara* factors indicate so and because Plaintiff contractually agreed to Defendant's choice of venue in New York. (*Id.*). The Defense further argues that the conduct complained of is that of Defendant's business operations from New York, as Defendant is a New York corporation with a principal place of business in Vallhalla, New York. (Doc. 5, pp. 9-10, 10 n.2) (citing Heady Decl. Def.'s Ex. A). Defendant additionally asserts that "[s]ome witnesses and records will be located in New York and those that are not can be made available there." (Doc. 5, p. 10).

17

The Defense submits that this federal Court has "no special local interest in adjudicating this matter" and that public policy would not be "adversely affected" as a result of a transfer. (*Id.*). Further, Defendant avers that a federal judge in the Southern District of New York would be familiar with the law applicable to this dispute and that "no administrative considerations [weigh] against transfer." (*Id.*). The Defense finds that because Plaintiff's business is no longer in operation, "[t]here is no compelling reason to conduct the litigation in Pennsylvania," even though the equipment at issue was once located at Plaintiff's location in Old Forge, Pennsylvania. (*Id.*).

In its Brief in Opposition to Defendant's Motion to Transfer, Plaintiff argues that under 28 U.S.C. § 1404(a), a federal district court may transfer a case to another venue where the action could have been brought originally "'for the convenience of parties and witnesses [and] in the interest of justice'" and that the burden of proving the necessity for a transfer is on the movant. (Doc. 6, p. 4) (*quoting and citing Jumara*, 55 F.3d at 879) (alteration in original). Plaintiff further asserts that "'a motion to transfer is not to be liberally granted'" and that "a plaintiff's choice of venue 'should not be lightly disturbed.'" (Doc. 6, p. 4) (*quoting and citing Stewart*, 487 U.S. at 29; *Jumara*, 55 F.3d at 878).

Plaintiff maintains that in this instance, this Court must initially decide whether the forum selection clause at issue is valid. (Doc. 6, pp. 4-5) (*citing Jumara*, 55 F.3d at 880).[9] Plaintiff

---

[9] In *Jumara*, the Third Circuit held:

Where the forum selection clause is valid, which requires that there have been no 'fraud, influence, or overweening bargaining power,' *see The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13, 92 S.Ct. 1907, 1914-15, 32

submits that, using a "public interest balancing test," this Court may still refuse to transfer this case even if the forum selection clause is determined to be valid. (Doc. 6, p. 5) (*citing Stewart*, 487 U.S. at 30-31).[10] Plaintiff argues that analyses of both the forum selection clause and of the public and private factors lend to the conclusion that this action should not be transferred. (Doc. 6, p. 5).

Plaintiff initially asserts that the forum selection clause referenced by Defendant is invalid, and that even the three cases to which Defendant cites on page nine of its Brief support that conclusion. (*Id.*). Plaintiff submits that *Schwartz* "involved the applicability of an arbitration provision contained in an on-line term of sale" but that *Schwartz* differs from the case at issue because the plaintiff in *Schwartz* physically signed a "work order containing language above the signature line that indicated that an on-line service agreement was binding." (*Id.*) (*Schwartz v. Comcast Corp.*, 256 F. App'x 515 (3d Cir. 2007)). According to Plaintiff, the Third Circuit held that a customer is bound by certain terms available on a website when he or she "affirmatively

---

L.Ed.2d 513 (1972), the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum.

55 F.3d at 880.

[10] The Supreme Court held in *Stewart* that "[i]t is conceivable in a particular case, for example, that because of these [public and private] factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause, whereas the coordinate state rule might dictate the opposite result." 487 U.S. at 22 (citing 15 Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3847, p. 371 (2d ed. 1986)).

acknowledges those terms by signing a document." (Doc. 6, p. 5).[11]

Plaintiff argues that because it does not sign a document referencing the Terms and Conditions of Sale on Defendant's website and because it did not receive the invoice until twenty-seven days after the inspection, the forum selection clause is invalid under *Schwartz*. (Doc. 6, p. 5).

Plaintiff further asserts that in another of Defendant's cited cases, *Feldman*, the District Court for the Eastern District of Pennsylvania held that a plaintiff challenging the validity of an online forum selection clause must prove that he or she had no reasonable notice of, and did not manifest assent to, the online agreement. (Doc. 6, p. 6) (citing 513 F. Supp. 2d 229). In *Feldman*, Plaintiff submits that the District Court upheld the validity of a forum selection clause because the plaintiff-advertiser had to click a box online acknowledging agreement to the terms and conditions in order to proceed with publishing his advertisement, and, thus, by clicking this box, the plaintiff-advertiser assented to the term containing the forum selection clause. (Doc.

---

[11] We note that we do not find that same holding in *Schwartz*. On the contrary, the Third Circuit held in *Schwartz*:

> It is true that in some cases, a party is excused from the terms of a contract where he never had access to the contract and thus could not make himself aware of its terms. *Quiles* [v. *Fin. Exch. Co.*], 879 A.2d [281,] 287 [(Pa. Super. Ct. 2005)]. However, in this case the terms of the contract were available to [the plaintiff] via the web site, and thus they are binding, despite the fact that he was unaware of them.

256 F. App'x at 520.

6, p. 6).[12]

Plaintiff maintains that, under *Feldman*, because Plaintiff was not notified of the Terms and Conditions of Sale until twenty-seven days after the inspection, it never manifested assent to the those terms that contained the forum selection clause. (*Id.*).

Plaintiff argues that in the last of Defendant's cited cases, *Pentecostal Temple Church*, the United States District Court for the Western District of Pennsylvania upheld a forum selection clause when the parties executed a purchase order, at the time the plaintiff placed its order, that "made reference to on-line General Terms and Conditions of Service which included a forum selection clause." (*Id.* at 7) (citing 2008 WL 4279842).[13]

Plaintiff submits that because the parties in this case never executed any type of agreement prior to, or at the time of, the inspection on January 28, 2011, it never "provided any indicia of assent to the Terms and Conditions of Sale," and, thus, the holding in *Pentecostal*

---

[12] In *Feldman*, the United States District Court for the Eastern District of Pennsylvania held:

> Plaintiff had to have had reasonable notice of the terms. By clicking on "Yes, I agree to the above terms and conditions" button, Plaintiff indicated assent to the terms. Therefore, the requirements of an express contract for reasonable notice of terms and mutual assent are satisfied. Plaintiff's failure to read the Agreement, if that were the case, does not excuse him from being bound by his express agreement.

513 F. Supp. 2d at 238.

[13] "Plaintiff had the opportunity to read and understand the Purchase Order it signed, as well as the terms incorporated therein by express and clear provision ... Plaintiff could have read the provisions, and failure to do so does not excuse compliance with their terms." *Pentecostal Temple Church*, 2008 WL 4279842, at *4, 5.

21

*Temple Church* supports the conclusion that the forum selection clause at issue is invalid. (Doc. 6, p. 7).

Plaintiff asserts that other federal courts of appeals and district courts make similar conclusions to the ones submitted in Plaintiff's Brief in Opposition. (*Id.*). According to Plaintiff, in *Specht v. Netscape Commc'n. Corp.*, 306 F.3d 17 (2d Cir. 2002), former Second Circuit Judge Sonia Sotomayor utilized a two-tiered test to determine whether the plaintiffs had assented to an online term of sale: "(1) whether there was 'reasonably conspicuous notice of the existence of contract terms'; and (2) 'unambiguous manifestation of assent to those terms by consumers.'" (Doc. 6, pp. 7-8) (quoting 306 F.3d at 35). Plaintiff alleges that the Second Circuit held in *Specht*:

> "We are not persuaded that a reasonably prudent offeree in these circumstances would have known of the existence of license terms. Plaintiffs were responding to an offer that did not carry an immediately visible notice of the existence of license terms or require unambiguous manifestation of assent to those terms."

(Doc. 6, p. 8) (alteration omitted) (quoting 306 F.3d at 31).

Plaintiff applies *Specht* to its case by arguing that Plaintiff "did not have reasonably conspicuous notice of the existence of a forum selection clause when it agreed to have Fuji act as an expert on its behalf at the inspection on January 28, 2011," because Plaintiff did not receive notice of the Terms and Conditions of Sale until it received the invoice twenty-seven (27) days later. (Doc. 6, p. 8). Plaintiff additionally submits that it "never provided unambiguous manifestation of assent" to the terms that were referenced on the invoice. (*Id.*).

Plaintiff cites two more cases that it finds have also used the two-tiered analysis from *Specht*. *See, E.J. Rogers, Inc. v. UPS*, 338 F. Supp. 2d 935 (S.D. Ind. 2004); *Affinity Internet, Inc.*

*v. Consolidated Credit Counseling*, 920 So. 2d. 1286 (FL Dist. Ct. of Appeals 2006) (document must be readily available and parties intent to be bound by on-line terms must be expressed). (Doc. 6, p. 8).[14]

Plaintiff then asserts that whether or not this Court finds the forum selection clause to be valid, we must evaluate whether this action should be transferred in the interest of justice. (Doc. 6, p. 9).

Plaintiff submits that Defendant has not put forth any argument regarding whether the venue requirements of 28 U.S.C. § 1391 support transferring this case to the Southern District of New York. (Doc. 6, p. 9). Plaintiff initially avers that the information available in the Complaint demonstrates only that Defendant has an office address in Edison, New Jersey, and that the invoice, attached as an exhibit to the Complaint, provides a remittance address in Pittsburgh, Pennsylvania. (*Id.* at 9-10, 10 n.2). Plaintiff concludes that the Complaint does not indicate that Defendant is incorporated in New York and implies that we cannot find that venue would be proper in the Southern District of New York because the Complaint lacks such indication. (*Id.* at 10).[15]

Plaintiff then argues that even if the forum selection clause is valid and § 1391 is satisfied,

---

[14] We take judicial notice of the fact that federal courts outside of the Second and Third Circuits and state courts outside of New York or Pennsylvania may agree with Plaintiff's conclusions.

[15] At this time, we accept the representations made by Defendant's counsel in their Brief in Support asserting that Defendant is a New York corporation with its principal place of business in Vallhalla, New York. (Doc. 5, p. 10 n.2). Thus, we do not address Plaintiff's arguments with respect to Defendant's failure to satisfy the alternative venue requirements of 28 U.S.C. § 1391. (See Doc. 6, p. 10).

Defendant's Motion to Transfer is still unsuccessful under the applicable balancing test. Plaintiff

puts forth the following factors for this Court's consideration from *Jumara*, 55 F.3d at 879-80:

> (1)     the convenience of preferences of both parties, including plaintiff's choice
> of forum;
>
> (2)     the convenience of the witnesses;
>
> (3)     access to sources of proof, such as books and records;
>
> (4)     practical consideration [sic] that make litigation easy, expeditious or
> inexpensive;
>
> (5)     relative calendar congestion of the two districts;
>
> (6)     where the events at issue took place and interests of local courts in
> deciding local issues;
>
> (7)     the enforceability of the judgment; and
>
> (8)     the familiarity of the trial judge with the applicable law.

(Doc. 6, pp. 10-11) (citing 55 F.3d at 879-80).

Plaintiff then analyzes each of the factors listed above. (See Doc. 6, pp. 11-13).

Regarding the first *Jumara* factor, *i.e.*, convenience and preferences of the parties,

Plaintiff again makes the argument the forum selection clause is invalid, and thus should not be

considered as an expression of Plaintiff's preferences, due to lack of notice and/or manifestation

of intent to be bound. (Doc. 6, p. 11). Plaintiff submits that because the clause is invalid,

Defendant bears the burden of demonstrating why Plaintiff's choice of forum in Pennsylvania

should be rejected. (*Id.*) (citing *Jumara*, 55 F.3d at 878 (Plaintiff's choice of forum is not to be

"lightly disturbed")). Plaintiff notes that even if this Court finds the forum selection clause to be

valid, such a finding only weighs in as one of eight factors to be considered. (Doc. 6, p. 11 n.5).

24

In its Reply Brief (Doc. 10), Defendant finds that:

[i]t is well-settled that a forum selection clause is presumptively valid absent a strong showing (1) that the forum selected is the result of fraud or overreaching; (2) that enforcement of the clause would violate a strong public policy of the forum; or (3) that enforcement in the particular circumstances of the case would result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *Coastal Steel Corp. v. Tilghman Whellabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983).

(Doc. 10, p. 2).

Defendant further argues that when Plaintiff sent payment to Defendant via Burke on December 14, 2011, Plaintiff manifested its assent to Defendant's Terms and Conditions of Sale, including the forum selection clause, because the check referenced included the invoice, "without objection." (*Id.* at 3).

Defendant maintains that "[i]t is of no moment that Plaintiff apparently failed to read the forum selection clause before assenting to its terms," as such a clause does not require bargaining in order to be valid. (*Id.*) (*citing Jordan Acquisitions Group LLC v. Adams Technologies, Inc.*, Civ. Action No. 09-542, 2009 WL 2473987, at *5-6 (W.D. Pa. Aug. 12, 2009)). Defendant concludes that the forum selection clause is enforceable regardless of whether Plaintiff read the Terms and Conditions of Sale referenced on the invoice prior to remitting payment. (Doc. 10, p. 4).

Defendant further responds to Plaintiff's Brief in Opposition by asserting that Plaintiff neglected the "significant weight to be afforded a forum selection clause," as it should be "treated as a manifestation of parties' preference as to a convenient forum." (*Id.*) (*citing Jumara*, 55 F.3d at 880). The Defense argues that a court's deference to a plaintiff's forum choice would

be incorrect where that plaintiff "already contracted as to an appropriate forum." (Doc. 10, p. 4) (*citing Jumara*, 55 F.3d at 880). Defendant maintains that the forum selection clause results in a burden on Plaintiff to prove "why it should not be bound by its contractual obligation." (Doc. 10, p. 4) (*citing Jumara*, 55 F.3d at 880). Defendant alleges that Plaintiff failed to meet its burden because it was notified of the Terms and Conditions of Sale via the invoice and thereby manifested assent to the those Terms, which contained the forum selection clause. (Doc. 10, p. 4).

Plaintiff asserts that Defendant does not even address the second *Jumara* factor, *i.e.*, convenience of witnesses, in its Brief in Support of its Motion to Transfer. (Doc. 6, p. 11). Plaintiff submits that it does not have knowledge of any witnesses relevant to this action who reside in New York, but that all of Plaintiff's potential witnesses from Global Print, a remediation company, and State Auto reside in Pennsylvania. (*Id.* at 11-12). Plaintiff continues to state that the relevant representatives from the Defendant-corporation, Wilson and Coon, are located in Georgia and New Jersey, respectively; thus, this factor "weighs heavily in favor of the current venue" in Pennsylvania. (*Id.* at 12).

Defendant finds Plaintiff's Brief in Opposition to make "sweeping statements about locations of non-party witnesses in Pennsylvania that are unsupported by any credible evidence" and prays that this Court ignore those statements. (Doc. 10, p. 5).[16] Defendant

---

[16] Defendant cites:

See also De Lage Landen Financial Servs. v. Rasa Floors, LP, Civ. Action No. 08-00533, 2008 WL 4822033, at *5 (E.D. Pa. Nov. 4, 2008) (finding forum selection clause just and reasonable where, although inconvenient, party did

concludes that this factor weighs in the Defense's favor because while it continues to operate business in New York, Plaintiff "admits that is no longer operates its business in Pennsylvania." (*Id*.).

With respect to the third *Jumara* factor, *i.e.*, access to sources of proof, Plaintiff avers that the Luxel Equipment and all of Plaintiff's documents are located in Pennsylvania and, further, that Defendant sent its relevant documents to Pennsylvania as well. (Doc. 6, p. 12). Plaintiff offers that any remaining relevant documents would be easily transferrable to Pennsylvania. (*Id*.). Plaintiff additionally states that because the loss itself occurred in Pennsylvania, any site inspections must occur in Pennsylvania. (*Id*.). Plaintiff finds this factor to "weigh[ ] heavily in favor of retaining the current venue." (*Id*.).

The Defense, however, argues that this factor is virtually neutral in this analysis because "documents can be transferred to New York just as easily as they can be transferred to Pennsylvania." (Doc. 10, p. 5). Defendants finds that Plaintiff's unsupported assertion that the Luxel Equipment is currently in Pennsylvania "carries no evidentiary weight" but that the transferral of this action to a court in New York would not preclude inspecting the equipment in Pennsylvania during discovery. (*Id*.).

Regarding the fourth and fifth *Jumara* factors, *i.e.*, practical considerations and relative calendar congestion, Plaintiff offers that it is not aware of any crucial facts that would weigh on

---

not indicate witnesses would be unavailable or it would be unable to litigate in the designated forum).

(Doc. 10, p. 5).

one side of the other. (Doc. 6, p. 12).

While agreeing with Plaintiff on its conclusion regarding the fifth factor, Defendant finds the fourth factor, *i.e.*, practical considerations, to weigh in the Defense's favor because proceeding in New York will result in "less disruption to its business with its witnesses appearing for depositions at or near its principal place of business." (Doc. 10, pp. 5-6). Defendant concludes that this same reasoning is inapplicable to Plaintiff because Plaintiff no longer operates business in Pennsylvania. (*Id.* at 6).

Plaintiff finds the sixth *Jumara* factor, *i.e.*, interests of local courts in deciding local issues, to also oppose transferring this action because all relevant events took place in Northeastern Pennsylvania, which is encompassed by the federal Middle District of Pennsylvania. (Doc. 6, p. 13).

Defendant asserts that a court in New York would have interest in presiding over this case because, while Plaintiff no longer operates business in Pennsylvania, Defendant continues to operate business in New York. (Doc. 10, p. 6).

Plaintiff submits that the seventh *Jumara* factor, *i.e.*, enforceability of judgment, is insignificant, as it is "not aware of any difference between the two venues relative to enforceability of a judgment." (Doc. 6, p. 13). Defendant similarly concedes. (Doc. 10, p. 6).

Under the last *Jumara* factor, *i.e.*, familiarity of the trial judge with applicable law, Plaintiff argues that Pennsylvania law should apply to this controversy because Defendant's forum selection and choice-of-law clauses are invalid, and, thus, this suit should be heard by a Federal Judge in Pennsylvania, rather than in New York. (Doc. 6, p. 13).

28

The Defense asserts that Plaintiff makes a "circular argument that Pennsylvania law will apply because [Defendant's] choice of law clause set forth in the Terms and Conditions of Sale are [sic] unenforceable," again making the argument that Plaintiff manifested assent to Defendant's Terms and Conditions when payment was remitted. (Doc. 10, p. 6). Defendant adds further that the choice of law clause in the terms, which provides that New York law should govern this claim, should be weighed in determining the proper forum. (*Id.*) (*citing Lieb v. America Pacific Int'l Inc.*, 489 F. Supp. 690, 697 (E.D. Pa. 1980)). Defendant submits that "[i]t defies logic that Plaintiff would bring suit based upon an Invoice attached to its Complaint, but then be permitted to ignore terms that are incorporated therein." (Doc. 10, p. 6).

Plaintiff thereby concludes its arguments in opposition to Defendant's Motion to Transfer by finding that "Fuji has failed to meet its burden of overcoming Global Print's choice of forum [and] Fuji's Motion to Transfer must be denied." (Doc. 6, p. 13).

Defendant concludes its arguments regarding transfer in its Reply Brief differently: "Given the significant weight afforded to forum selection and choice of law clauses in a transfer analysis, and the balance of the remaining factors being neutral or in Fujifilm's favor, transfer to New York is appropriate." (Doc. 10, p. 7).

For the following reasons, we will recommend that this Court deny Defendant's Motion to Transfer to the Southern District of New York at this time.

When a federal court sitting in diversity examines a motion to transfer venue, "the effect to be given a contractual forum selection clause [ ] is determined by federal not state law ... [b]ecause '[q]uestions of venue and the enforcement of forum selection clauses are essentially

procedural, rather than substantive, in nature.'" *Jumara*, 55 F.3d at 877 (last alteration in original) (*quoting Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1991)). *See also Stewart*, 487 U.S. at 29.

The Supreme Court has found that when there is a dispute between two American parties regarding a contractual forum, the party claiming that the contractual forum is unreasonable "should bear a heavy burden of proof" to demonstrate that the agreement was one of adhesion or that the parties did not contemplate the specific controversy at the time the agreement was executed, for example. *Zapata*, 407 U.S. at 17. *See also MoneyGram*, 65 F. App'x at 848; *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475-76 (2d Cir. 2011); *GWR Medical, Inc. V. Baez*, Civil No. 07-1103, 2008 WL 698995, at *6 (E.D. Pa. Mar. 13, 2008) ("[T]he parties choice of venue clause is binding unless enforcement is unfair, unreasonable or unjust.").[17]

28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

---

[17] Appellate courts of Pennsylvania and New York have held similarly. *See Autochoice Unlimited, Inc. v. Avangard Auto Finance, Inc.*, 9 A.3d 1207, 1215 (Pa. Super. Ct. 2010) (*citing Central Contracting Co. V. C. E. Youngdahl & Co.*, 209 A.2d 810, 816 (Pa. 1965)) ("[A] court in which venue is proper and which has jurisdiction should decline to proceed with the case when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation.");*Horton v. Concerns of Police Survivors, Inc.*, 878 N.Y.S.2d 793, 794 (N.Y. App. Div. 2009) (*citing LSPA Enter., Inc. v. Jani-King of N.Y., Inc.*, 817 N.Y.S.2d 657, 658 (N.Y. App. Div. 2006)) ("[A] forum selection clause is prima facie valid and enforceable "unless it is shown by the challenging party to be unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching, or it is shown that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court.").

where it might have been brought or to any district or division to which all parties have consented."

   To determine whether this action could have been brought originally in the United States District Court for the Southern District of New York, we must first determine whether venue would have been proper there. Under 28 U.S.C. § 1391(b), "[a] civil action may be brought in [ ] a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Section 1391(d) of the same chapter reads:

> For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which is contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is not such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

   The Supreme Court held in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985):

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 [ ] (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 [ ] 1984).

_____We find that the District Court for the Southern District of New York would have been able to exercise personal jurisdiction over Defendant had Plaintiff filed the suit in that court originally because Defendant is incorporated in New York and operates its principal place of business in Valhalla, New York, which is encompassed by the Southern District. Further, the alleged injuries in this case arise from a contractual agreement within which <u>Defendant</u> placed

a forum selection clause indicating that any action should be brought in federal or state court in Westchester County, New York, which demonstrates that Defendant purposefully directs its activities in the Southern District of New York. *See Burger King*, 471 U.S. at 472-73. Because the Southern District would have been able to exercise personal jurisdiction over Defendant, venue also would have been proper under 28 U.S.C. § 1391; thus, Plaintiff could have properly filed this suit with the District Court for the Southern District of New York, and the case may be transferred there "[f]or the convenience of parties and witnesses [and] in the interest of justice." See 28 U.S.C. § 1404(a).

Finding that this action is transferrable to the Southern District of New York, we must now determine whether transferring it would in fact be "[f]or the convenience of parties and witnesses [and] in the interest of justice." See 28 U.S.C. § 1404(a). In so evaluating, we must look to the factors put forth by the Third Circuit in *Jumara*:

(1)      the plaintiff's choice of forum;

(2)      the defendant's preference;

(3)      where the claim arose;

(4)      the convenience of the parties ... and of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;

(5)      the location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum;

(6)      the enforceability of the judgment;

(7)      practical considerations that could make the trial easy, expeditious, or inexpensive;

(8)     the relative court congestion in the competing courts;

(9)     the local interest in deciding local controversies at home;

(10)    the public policies of the fora;

(11)    and the familiarity of the trial judge with the applicable state law.

*Brown*, 2005 WL 1420776, at *2 (*citing Jumara*, 55 F.3d at 879-80).

The first and second *Jumara* factors can be inferred from the forum selection clause, the court in which Plaintiff filed suit (the Court of Common Pleas of Luzerne County, Pennsylvania), and the court to which Defendant would like the action to be transferred (U.S. District Court for the Southern District of New York). Initially, we agree with Plaintiff that, at this time, the forum selection clause at issue should not carry very much weight in this analysis.

_____In evaluating the facts presented in a light most favorable to Plaintiff, the non-moving party, we find it relevant that Plaintiff did not receive notice of the Terms and Conditions of Sale, containing the forum selection clause, until after Defendant's service was rendered. Under traditional contract law, "[a]n offer can be accepted by the rendering of a performance only if the offer invites such an acceptance." Restatement (Second) of Contracts § 53 (1981). *See also Mountain Properties, Inc. v. Tyler Hill Realty Corp.*, 767 A.2d 1096, 1101 (Pa. Super. Ct. 2001) (*citing Accu-Weather, Inc. v. Thomas Broadcasting Co.*, 625 A.2d 75, 78 (1993)) ("An offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted."); *Cyberlease, LLC v. JP Morgan Chase Bank*, No. 04 Civ. 1221(NRB), 2005 WL 2030317, at *3 (S.D.N.Y. 2005) (*citing John William Costello Associates, Inc. v. Standard Metals Corp.*, 472 N.Y.S.2d 325, 327-28 (N.Y. App. Div. 1984)) ("Under New

33

York law, however, a contract may be accepted by 'conduct or acquiescence' [ ].").

Under both Pennsylvania and New York law, then, Defendant accepted Plaintiff's offer for payment in exchange for an expert opinion when it sent representatives to inspect the Luxel Equipment on January 28, 2011. (Doc.1, p. 8). The facts presented indicate that Plaintiff did not receive notice of the Terms and Conditions of Sale via the invoice until at least February 24, 2011, twenty-seven days after the agreement at issue was finalized. (See Doc. 1, p. 16).

Defendant argues that Plaintiff manifested its assent to the forum selection clause when it remitted payment for the January 28 inspection on December 14, 2011. (Doc. 10, p. 3). While it is possible for this Court to find that Plaintiff did manifest such assent in remitting payment, we find it more plausible that Plaintiff wished to fulfill its own contractual obligation of paying for the service rendered, *i.e.*, the inspection, which occurred prior to the notification of the forum selection clause Plaintiff received via the invoice.

Thus, we find that Plaintiff successfully proved its heavy burden of "demonstrating why [it] should not be bound by [its] contractual choice of forum," but we weigh the forum selection clause's existence into the appropriate balancing test accordingly. *See Jumara*, 55 F.3d at 879, 880.

The next factor for analysis under the *Jumara* balancing test involves where the claim arose. *See Jumara*, 55 F.3d at 879. Plaintiff's claims clearly arose in Pennsylvania, as that is where the Luxel Equipment was located and damaged, as well as where the inspection occurred. Thus, this factor weighs in Plaintiff's favor.

We now analyze the convenience of the parties and of potential witnesses as indicated

by relevant physical and financial conditions with respect to one forum over the other. *See Jumara*, 55 F.3d at 879. Finding no pleadings regarding any party's or witness's physical condition, we turn to the relevant financial conditions. Defendant points out numerous times in its Reply Brief that it still operates its business in New York, while Plaintiff is no longer operating business in Pennsylvania. We note that the reason Plaintiff is no longer operating its business is because it was forced to close its doors as a result of events from which these claims arise. We find this factor to similarly weigh in Plaintiff's favor, as Defendant is likely more financially capable of travel at this time. Similarly, we find that the facts presented indicate that the majority of potential witnesses, including representatives from LWG and State Auto, are located in Pennsylvania.

We find the next *Jumara* factor regarding the location of books and records to also weigh in favor of retaining the case in the Middle District of Pennsylvania. *See Jumara*, 55 F.3d at 879. As stated, these claims arose in Northeastern Pennsylvania, and the facts presented indicate that the relevant records are similarly located. While it is true that records are easily transported, the Luxel Equipment at issue in this case is likely not.

As conceded by both parties, the factors considering enforceability of judgments and court congestion are moot in this instance. *See id*.

We find no practical considerations that may make the trial easier, more expeditious, or more inexpensive in one forum than another that have not already been weighed. *See id*. We further note that Defendant's asserted considerations regarding this factor are misdirected, as the Third Circuit in *Jumara* lists these considerations as a <u>public</u> factor. *Id*. We interpret this to

mean that these are considerations that would make trial easier, more expeditious, or more inexpensive for the court system, not for the parties.

We further find that this Court does have an interest in hearing this controversy. *See id.* As mentioned, these claims arise locally from a small, local business in Old Forge, Pennsylvania, which is encompassed by this Court's geographical jurisdiction.

With respect to public policies of the relevant fora, we do not find that either party would be affected by local biases or prejudices in either fora; thus, this factor is also moot. *See id.*

Finally, finding at this point in time that the forum selection and choice of law clauses are unenforceable, we recommend that this case be governed by Pennsylvania law; therefore, a trial judge in this Court would have more familiarity with the applicable law than a judge sitting for the Southern District of New York. *See id.*

Taking all of the factors from *Jumara* into consideration, we find the balancing test to weight heavily in Plaintiff's favor. Accordingly, we will recommend that Defendant's Motion to Transfer be denied at this time.

## B. Motion to Dismiss.

On January 24, 2012, with its Motion to Transfer, Defendant additionally filed a Motion to Dismiss Count I (Negligence) of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 5, p. 1). Federal Rule of Civil Procedure 12(b)(6) reads: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: [ ] (6) failure to state a

claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Defendant argues that Plaintiff's negligence claim "should be dismissed with prejudice for failure to state a claim because it is merely a recast of a breach of contract claim." (Doc. 5, p. 1). Defendant asserts that Counts I and II of Plaintiff's Complaint are duplicative, as each arise "out of an alleged duty to plaintiff by virtue of contract."(*Id.* at 5).[18]

The Defense maintains:

---

[18] The relevant portions of Count I (Neglience) of Plaintiff's Complaint read:

In light of the conduct detailed above, Defendant, Fuji, had a duty established by contract, to provide Global Print with an accurate opinion concerning repair versus replacement of the Luxel Equipment ... Defendant, Fuji, breached that duty by acknowledging that cleaning, reconditioning and repair may be successful after water intrusion, yet failing to advise Global Print of this opinion prior to Global Print ceasing business operations ... As a direct and proximate result of Defendant's, Fuji's, careless and negligent conduct, Global Print has suffered a loss of business income and future business income/earning capacity.

(Doc. 1, p. 12).

The relevant portions of Count II (Breach of Contract Claim) of Plaintiff's Complaint read:

By failing to effectuate a fair, objective evaluation and investigation of Global Print's Luxel Equipment, Defendant, Fuji, breached its contractual obligations to Global Print. Instead, Defendant, Fuji, placed its own financial interest ahead of Global Print's, that being the sale of new Luxel Equipment ... The foregoing conduct by Defendant, Fuji, constituted a breach of contract with Global Print ... Defendant, Fuji, acting through its agents, servants, employees and representatives, engaged in negligent conduct with the result of which inflicted upon Global Print a substantial financial loss ... As a direct and proximate result of Defendant's, Fuji's, misconduct, Global Print has suffered and will continue to suffer a pecuniary loss."

(Doc. 1, pp. 12-13).

Under New York law, "[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190, 193 (N.Y. 1987) (affirming dismissal of negligence claims); *see also Chase Manhattan Bank, N.A. v. Remington Prods.*, Inc., [sic] 865 F.Supp. 194, 200 (S.D.N.Y.1994) ("New York does not recognize a cause of action for negligent performance of a contract."), *aff'd* 71 F.3d 407 (2d Cir.1995). Thus, a negligence claim that is merely a recast of a breach of contract claim fails as a matter of law. *D'Ambrosio v. Engel*, 292 A.D.2d 564, 741 N.Y.S.2d 42, 44 (2d Dep't App. Div. 2002) ("It is well established that a simple breach of contract does not give rise to an action in tort."); *Brine v. 65th Street Townhouse LLC*, 20 Misc.3d 1138(A), 867 N.Y.S.2d 372, 2008 WL 3915784 (N.Y. Sup. Ct. 2008) ("A claim for negligence that merely restates one for breach of contract cannot be maintained.").

(Doc. 5, pp. 5-6) (alteration in original).

Defendant submits that while, as a matter of contract, the claims in Plaintiff's Complaint are governed by New York law, this Court would reach the same result applying Pennsylvania law. (Doc. 5, p. 6 n.1). The Defense asserts that Pennsylvania's "economic loss doctrine holds that negligence theories do not apply to actions between commercial enterprises where, as here, the only damages alleged are economic losses." (*Id.*).[19]

The Defense avers that Plaintiff's claims arise purely out of an alleged breach of contract

---

[19] Defendant cites the following as support:

*See, e.g., Sunburst Paper, LLC v. Keating Fiber International, Inc.*, Civil Action No. 06-3959, 2006 WL 3097771, at *3 (E.D. Pa. Oct. 30, 2006) (citing *Lower Lake Dock Co. v. Messinger Bearing Corp.*, 577 A.2d 631, 634-34 (Pa. Super 1990) (negligence claim barred); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620 (3d Cir. 1995) (negligent misrepresentation claim barred); *Sun Co. v. Badger Design & Constructors, Inc.*, 939 F.Supp. 365, 374 (E.D.Pa. 1996) (negligence claim barred)).

(Doc. 5, p. 6 n.1).

and that Plaintiff has no basis of recovery outside of the parties' contractual agreement. (*Id.*). Defendant submits that Plaintiff has not asserted that Defendant owed Plaintiff any duty other than that imposed by the agreement itself or that Defendant engaged in tortious conduct aside from its obligations imposed by the contract. (*Id.*) (*citing D'Ambrosio v. Engel*, 741 N.Y.S.2d 42, 44 (N.Y. App. Div. 2002)).

Defendant finds that because Plaintiff's breach of contract claim is tantamount to its negligence claim, "the latter fails as a matter of law." (Doc. 5, p. 7) (citing Compl. at 8-9; *B& M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 488 (S.D.N.Y. 2010) ("This negligence claim is nothing more than a duplication of [plaintiff's] core contract claims.") (granting motion to dismiss); *Nardiello v. Stone*, 652 N.Y.S.2d 647, 649 (N.Y. App. Div. 1997) (holding that negligence claim merged with breach of contract claim)).

Plaintiff responds by asserting that while a tort action arises from a breach of law-imposed duty, a contract action arises from a breach of agreement-imposed duty. (Doc. 6, p. 14) (*citing Bash v. Bell Telephone Co.*, 601 A.2d 825 (Pa. Super. Ct. 1992)).[20] Plaintiff continues to state that the existence of a contractual agreement between two parties does not prevent one from bringing a tort claim against the other. (Doc. 6, p. 14) (*citing eToll, Inc. v. Elias/Saviod Adver., Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002); *Bohler-Uddeholm Am., Inc. v. Ellwood Group,*

---

[20] Plaintiff submits that Pennsylvania law applies to its claim. (Doc. 6, p. 14) (*citing Klaxon Co. V. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a diversity of citizenship case brought in Delaware federal court that involved a breach of a contract executed in New York was governed by Delaware law because federal courts sitting in diversity should apply the law of the forum state)).

*Inc.*, 247 F.3d 79, 104 (3d Cir. 2001)).[21]

Plaintiff then sets forth the 'gist-of-the-action' doctrine but notes that the Pennsylvania Supreme Court has never explicitly adopted this test: "'When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort.'" (Doc. 6, pp. 14-15, 14 n.8) (*quoting Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999)).[22] Plaintiff claims that the test centers around whether the duties in question are intertwined with contractually-imposed obligations or

_____

[21] We note that the Superior Court of Pennsylvania ultimately affirmed the dismissal of the plaintiff's negligence claim in *Bash* because the "parties' obligations [were] defined by the terms of the contract, and not by the larger social policies embodied in the law of torts." *Bash*, 601 A.2d at 829-30. Additionally, the court found that the trial court in *eToll* did not err as a matter of law in dismissing that plaintiff's fraud claim under the gist-of-action-doctrine "[b]ecause the gist of appellant's fraud action [laid] in contract." *eToll*, 811 A.2d at 21.

Conversely, the Third Circuit in *Bohler-Uddeholm* did allow the a claim for breach of fiduciary duty to proceed along with a breach of contract claim but did so because it found a "larger social policy" in the breach of fiduciary duty claim that requires "fair dealing and solicitude from a majority shareholder to minority shareholders in a joint venture." *Bohler-Uddeholm*, 247 F.3d at 105.

[22] While Plaintiff is correct in that the Pennsylvania Supreme Court has never *expressly* adopted the gist-of-the-action doctrine, the court has referenced it in a manner that lends to the conclusion that it recognizes the doctrine:

Appellants add they were precluded by the "gist of the action" doctrine from suing the City in tort. This doctrine "maintain[s] the conceptual distinction between breach of contract claims and tort claims[,]" and precludes plaintiffs from recasting ordinary breach of contract claims as tort claims. *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa.Super.2002).

*McShea v. City of Phila.*, 995 A.2d 334, 339 (Pa. 2010).

collateral to the contract. (Doc. 6, p. 15). If the duties are intertwined, then the claim sounds in contract, but if they are collateral, then the claim sounds in tort. (*Id.*).[23]

Plaintiff finds that the economic loss doctrine on which Defendant relies, which also not explicitly adopted by the Pennsylvania Supreme Court, is similar to the gist-of-the-action doctrine. (Doc. 6, p. 15, 15 n.9).[24] The economic loss doctrine, according to Plaintiff, "'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" (*Id.* 15) (*quoting Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002)).

Plaintiff submits that Defendant's relevant contractual duties involved inspection of the Luxel Equipment and providing an opinion on repair versus replacement. (Doc. 6, p. 15). According to Plaintiff, Defendant was negligent when Wilson changed his opinion on repair

---

[23] "When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort; a tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious." *Sunquest*, 40 F. Supp. 2d at 651.

[24] Again, while the Pennsylvania Supreme Court has not *explicitly* adopted the economic loss doctrine, it has referenced it in a recognizing manner. In determining how a certain Pennsylvania statute factored in economic loss, the court found:

> The economic loss doctrine was well-established in tort law when the Act was enacted, and when the Act was amended in 1986. *See Aikens v. Baltimore and Ohio Railroad Company*, 348 Pa.Super. 17, 501 A.2d 277, 278-79 (1985) (roots of economic loss doctrine first recognized in *Robins Dry Dock and Repair Company v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927)). The legislature was presumably aware of the economic loss doctrine when it established the statutory scheme governing the relationship among the entities required to participate under the Act.

*Excavation Technologies, Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 842-43 (Pa. 2009).

versus replacement without informing Plaintiff of that changed opinion, thereby allowing Plaintiff to "deteriorate[ ] beyond repair." (*Id.* at 16). Plaintiff claims that the loss of its business due to the aforementioned negligent omission permits a claim for "extra-contractual damages and loss to [Plaintiff]." (*Id.*). Plaintiff concludes that, with respect to this negligence, "neither the gist of the action or the economic loss doctrine apply." (*Id.*).

In its Reply Brief, Defendant asserts that its arguments that Plaintiff's claims are governed by New York law are unopposed, as the Defense finds that Plaintiff addressed none of those arguments in its Brief in Opposition to Defendant's Motion to Dismiss. (Doc. 10, p. 7).

Defendant continues to analyze Plaintiff's tort claim under Pennsylvania law, however, and further claims that Plaintiff "miss[ed] the mark" in depending upon the gist-of-the-action doctrine. (*Id.*) (*citing Sunquest*, 40 F. Supp. 2d 644 (W.D. Pa. 1999). Defendant echoes that under the gist-of-the-action doctrine, a court must evaluate whether the 'gist' or gravamen of a claim sounds in tort or in contract. Defendant includes the following passage from *Sunquest*:

> [C]ontract actions arise from breach of duties mutually agreed to, while torts have their basis in violations of duties imposed as a matter of social policy. Thus, the gist of the action doctrine cannot be evaded by the mere expedient of pleading that the defendant acted negligently . . . if the gravamen of the claim is that the plaintiff failed to fulfill a promise. Nor may a plaintiff "disrupt the expectations of the parties by supplanting their agreement with a tort action that claims the party misperformed the agreement in question." Put simply, a plaintiff cannot assert a fraud or negligent misrepresentation claim when that theory is "merely another way of stating its breach of contract claim [,]" or when its success "would be wholly dependent upon the terms of the contracts...." *C.P. Cook Coal Co. v. Browning Ferris, Inc.*, No. 93-7085, 1995 WL 251341, *5 (E.D.Pa. Apr. 26, 1995) (negligence); *accord USX Corp. v. Prime Leasing, Inc.*, 988 F.2d 433, 440 (3d Cir. 1993) (dismissing tortious misrepresentation claim when the same conduct formed basis for alleged breach of contract); *Horizon Unlimited*, 1998 WL 88391 at *5.

(Doc. 10, pp. 7-8) (alterations in original) (citations omitted in original) (*quoting Sunquest*, 40 F. Supp. 2d at 651).

Defendant asserts that Plaintiff's claim that Defendant "allegedly misperformed the subject agreement" is in direct conflict with requisite Pennsylvania law because the conduct complained of is that one of Defendant's representatives allegedly failed to fulfill a promise. (Doc. 10, p. 8). The Defense then concludes that Plaintiff's negligence claim fails under Pennsylvania law and again requests that this Court dismiss with prejudice Count I of the Complaint. (*Id.*).

Because we will recommend that this Court deny Defendant's Motion to Transfer at this time, we analyze Plaintiff's claims under Pennsylvania law for the purpose of Defendant's Motion to Dismiss.

As stated, Pennsylvania courts follow the gist-of-the-action doctrine, which "is designed to maintain the conceptual distinction between breach of contract claims and tort claims" and "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Pediatrix Screening*, 602 F.3d 541, 548 (3d Cir. 2010) (internal quotation marks omitted) (*quoting eToll*, 811 A.2d at 14). *See also Williams v. Hilton Group PLC*, 93 F. App'x 384, 386-87 (3d Cir. 2004); *Sunquest*, 40 F. Supp. 2d at 651.

In order for a plaintiff to raise a tort claim rather than a breach of contract claim, the alleged wrong complained of must be "the gist of the action, the contract being collateral." *Pediatrix*, 602 F.3d at 548 (internal quotation marks omitted) (*quoting eToll*, 811 A.2d at 14). Pennsylvania courts and federal courts interpreting Pennsylvania law have held that claims of

43

fraud are barred when: (1) "they arose during the course of the parties' contractual relationship"; (2) "the allegedly fraudulent acts were breaches of duties 'created and grounded in the ... contract'"; and (3) "the damages 'would be compensable in an ordinary contract action [and] thus, the claim would essentially duplicate a breach of contract action.'" *Pediatrix*, 602 F.3d at 548 (alterations in original) (*quoting and citing eToll*, 811 A.2d at 20-21). When a tort claim is "inextricably intertwined" with a contract claim, the gist of the action sounds in contract, and the tort claim should be dismissed. *Pediatrix*, 602 F.3d at 549 (*citing eToll*, 811 A.2d at 21).[25]

---

[25] The United States District Court for the Eastern District of Pennsylvania discussed the doctrine in detail in *C.P. Cook Coal Co., Inc. v. Browning-Ferris, Inc.*, Civ. A. No. 93-CV-7085, 1995 WL 251341, at *4 (E.D. Pa. Apr. 26, 1995):

> Under Pennsylvania law, courts have been reluctant to allow tort recovery for what is essentially a breach of contract action. *See Windsor Sec., Inc. V. Hartford Life Ins. Co.*, 986 F.2d 655, 664 (3d Cir. 1993) ("Breach of contract, without more, is not a tort"); *Roy F. Weston v. Halliburton Nus Env. Corp.*, 839 F. Supp. 1151, 1156 (E.D. Pa. 1993) (same). The Third Circuit has held that, under Pennsylvania law, summary judgment is proper on a plaintiff's tort claims when those claims are based on the same instances of defendant's conduct as were the contract claims. *See USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 440 (3d Cir. 1993). There have been two "lines of reasoning" employed by courts to determine whether a tort claim may be maintained independently of a breach of contract claim. *See Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195 (3d Cir. 1995). The older line, first articulated in the Pennsylvania Superior Court's decision in *Raab v. Keystone Insurance Co.*, 271 Pa.Super. 185, 412 A.2d 638 (1979), found that there could be an action in tort where there is an "improper performance of a contractual obligation (misfeasance) rather than the mere failure to perform (nonfeasance)." 412 A.2d at 639. The second line of reasoning, more commonly employed by courts today, is whether "the wrong ascribed to defendant ... [is] the gist of the action, the contract being collateral." *Wood & Locker, Inc. v. Doran and Assocs.*, 708 F. Supp. 684, 689 (W.D. Pa. 1989) (quoting *Closed Circuit Corp. of America v. Jerrold Electronics*, 426 F. Supp. 361, 364 (E.D. Pa. 1977)).

Applying the reasoning used in *Pediatrix* to the case at bar, we will recommend that Plaintiff's negligence claim be dismissed from this action. *See Pediatrix*, 602 F.3d at 548. We find the Third Circuit's reasoning as applied to a claim of fraud arising from a contractual agreement to be similarly relevant in analyzing Plaintiff's negligence claim. *See id.* The *Pediatrix* court found that fraud claims are barred under Pennsylvania's gist-of-the-action doctrine when they stem from a contractual relationship, are essentially failures to perform duties "created and grounded in [a] contract," and led to damages that similarly resulted from a breach of contract. *Pediatrix*, 602 F.3d at 548. We find all three of these requirements to be applicable to Plaintiff's negligence claim.

Plaintiff's claim for negligence against Defendant clearly arises from a contractual relationship in that it requests relief for Defendant's alleged failure to provide an truthful expert opinion following the inspection for which Defendant was hired by Plaintiff. (Doc. 1, p. 12). Additionally, Plaintiff itself states in its claim that the duty Defendant allegedly breached was "established by contract." (*Id.*). Finally, Plaintiff avers that the damages from Defendant's alleged negligence were Plaintiff's "loss of business income and future business income/earning capacity," which are equivalent to the damages Plaintiff asserts under its breach of contract claim against Defendant. (Doc. 1, pp. 12, 13).

Further, as Defendant argues, Plaintiff's negligence claim is similarly barred by Pennsylvania's economic loss doctrine, which provides that negligence theories are not applicable to suits between commercial entities when the only damages asserted are those of economic loss. *Sunburst Paper, LLC v. Keating Fibre Intern., Inc.*, Civil Action No. 06-3959, 2006

WL 3097771, at *3 (E.D. Pa. Oct. 30, 2006) (*citing Lower Lake Dock Co. V. Messinger Bearing Corp.*, 577 A.2d 631, 634-34 (Pa. Super. Ct. 1990); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620 (3d Cir. 1995); *Factory Mkt., Inc. v. Schuller Int'l*, 987 F. Supp. 387, 397 (E.D. Pa. 1997); *Sun Co. v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 374 (E.D. Pa. 1996)).

Accordingly, we find that Plaintiff's negligence claim is merely recasting its breach of contract claim; thus, we will recommend that former be dismissed from this action.

## VII. RECOMMENDATION

Based on the foregoing, it is respectfully recommended that this Court: (1) deny at this time Defendant's Motion to Transfer this action to the Southern District of New York; and (2) grant Defendant's Motion to Dismiss Count I (Negligence) of the Complaint.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 16, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

OAK STREET PRINTERY, LLC,            :         CIVIL ACTION NO. **3:CV-12-0096**
                                     :
              Plaintiff              :         (Judge Mariani)
                                     :
              v.                     :         (Magistrate Judge Blewitt)
                                     :
FUJIFILM NORTH AMERICA CORP.,        :
                                     :
              Defendant              :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **August 16, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or his discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Failure to file timely objections to the foregoing Report and
Recommendation may constitute a waiver of any appellate rights.


                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**


**Dated: August 16, 2012**