THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OAK STREET PRINTERY, LLC | : | |
| | : | |
| **Plaintiff** | : | |
| v. | : | **3:12-CV-96** |
| | : | **(JUDGE MARIANI)** |
| FUJIFILM NORTH AMERICA CORP. | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.  Introduction

Before the Court are Defendant's Motion to Dismiss and Transfer Case (Doc. 4), all

accompanying briefs, Magistrate Judge Blewitt's Report & Recommendation ("R&R") (Doc.

15), Defendant's Objections (Doc. 16), Plaintiff's Brief in Opposition to Defendant's

Objections (Doc. 17), and Defendant's Reply Brief (Doc. 18).  For the reasons set forth

below, the Court will adopt Judge Blewitt's R&R, grant Defendant's Motion to Dismiss

Plaintiff's negligence claim, and deny Defendant's Motion to Transfer Case under 28 U.S.C.

§ 1404(a).

### II.  Factual Allegations and Procedural History

Given Judge Blewitt's extensive recitation of Plaintiff's factual allegations and the

case's procedural history, it is unnecessary to repeat them here, so the Court will provide

only a brief background of the case.

In January 2011, Plaintiff informed its insurer of water damage to its business property, including Luxel equipment purchased from Defendant. ("Compl." ¶¶ 3-4). Defendant had serviced the equipment since Plaintiff's purchase. (*Id*. at ¶¶ 6-7). On this particular occasion, Plaintiff hired Defendant to inspect the equipment, and Defendant charged Plaintiff $1,590 for the inspection and its opinion on whether it should be repaired or replaced. (*Id.* at ¶ 8). Plaintiff's insurer felt the equipment could be repaired while Defendant's representative believed it had to be replaced. (*Id*. at ¶¶ 10, 13-14, 17). Because of the differences of opinion, the equipment was neither repaired nor replaced, and Plaintiff went out of business due to its inability to operate. (*Id*. at ¶ 21). However, after Plaintiff closed its doors, Defendant's representative changed his opinion and said he was "uncertain" as to whether the equipment could be repaired. (*Id*. at ¶ 23). He never informed Plaintiff about his change in position. (*Id*. at ¶ 24).

Plaintiff filed a Complaint against Defendant in the Court of Common Pleas in Luzerne County for negligence in failing to provide Plaintiff with an accurate opinion and failing to inform Plaintiff about Defendant's changed opinion. Plaintiff also sued Defendant for breach of contract for failing to provide a fair and objective evaluation when it inspected Plaintiff's equipment. After removing the case to federal court, Defendant moved to dismiss Plaintiff's negligence claim and moved to transfer the case to the Southern District of New York. The parties have fully briefed Defendant's motions, and the matters are now ripe for disposition.

## III. Standard of Review

A district court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report & Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1); *see also Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); Local Rule of the Middle District of Pennsylvania 72.3.

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[W]hen presented with a motion to dismiss for failure to state a claim, . . . [the] Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The "Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211.

District courts confronted by a motion to dismiss should engage in a two-step analysis. First, the district court should accept all well-pleaded facts as true, but may reject mere legal conclusions. Second, the district court should then determine whether the facts as asserted, establish a "plausible claim for relief." *Iqbal,* 556 U.S. at 679. Thus, a complaint must "show" an entitlement for relief with facts, as a mere allegation that a plaintiff is entitled to relief is insufficient to withstand a motion to dismiss. *See Phillips v. Co. of Allegheny,* 515 F.3d 224, 234-35 (3d Cir. 2008). As the Supreme Court noted in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. At 1949. This "plausibility" determination will be a "context- specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.; see also Fowler,* 578 F.3d at 210-11.

## IV. Analysis

### a. Motion to Dismiss Plaintiff's Negligence Claim

Plaintiff alleges that Defendant was negligent when its agent failed to inform Plaintiff of his changed opinion regarding whether the Luxel equipment could be repaired. Judge Blewitt recommended dismissing Plaintiff's negligence claim against Defendant under both New York and Pennsylvania law, because the alleged negligence stemmed from Defendant's contractual obligations to Plaintiff and not any independent duty sounding in tort.

Plaintiff did not object to Judge Blewitt's recommendation, and in its Brief in Opposition to Defendant's Objections, Plaintiff indicated it did not object to having its negligence count dismissed. (Doc. 17, at 2, n.1). Having reviewed the R&R for clear error or manifest injustice, the undersigned agrees with Judge Blewitt's analysis and will adopt his recommendation by dismissing Plaintiff's negligence claim against Defendant.

### b. Motion to Transfer Case

Judge Blewitt recommended denying Defendant's motion to transfer case, and Defendant filed timely objections. Therefore, the Court will review Judge Blewitt's recommendations under a *de novo* standard.

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Federal district courts have broad discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (internal quotation marks omitted). The Third Circuit has held that federal law controls on "questions of venue and the enforcement of forum selection clauses [because they] are essentially procedural, rather than substantive, in nature." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir.1995). The burden of showing the need for a transfer is on the moving party. *Id.* at 879.

When two parties have mutually agreed to a forum selection clause it is presumed to

be valid, and it is thus

> incumbent on the party seeking to escape his contract to show that trial in the
> contractual forum will be so gravely difficult and inconvenient that he will for
> all practical purposes be deprived of his day in court. Absent that, there is no
> basis for concluding that it would be unfair, unjust, or unreasonable to hold
> that party to his bargain.

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18, 92 S. Ct. 1907, 32 L. Ed. 2d 513

(1972) (the party seeking to escape the contract must "carry [a] heavy burden."). A plaintiff

may also meets its burden by showing the forum selection clause was procured through

"fraud or overreaching" or that its enforcement would run counter to a strong public policy of

the forum where the lawsuit was brought. *Id*. at 15. Plaintiff does not contend that

Defendant engaged in fraud, that enforcing the forum selection clause would run counter to

public policy, or that transferring the case to the Southern District of New York would be so

difficult that it would essentially be deprived of its day in court. Rather, Plaintiff argues that

the forum selection clause is invalid because it never manifested assent to the Terms and

Conditions referred to in the invoice.

Following Defendant's inspection of Plaintiff's Luxel equipment in January 2011,

Defendant sent an invoice to Plaintiff dated February 24, 2011. (Doc. 1, at 17). The bottom

of the invoice said: "This invoice incorporates and is subject to the applicable Terms and

Conditions of Sale located at www.fujifilmusa.com/termsandconditions/." (*Id*.). The final

paragraph of the Terms and Conditions of Sale states:

The validity, construction and performance of these Terms and Conditions
and the Contract formed between the parties shall be governed by the laws of
the State of New York (without giving effect to its principles of conflict of
laws). Buyer by submitting an order for Products and/or Services or
otherwise entering into a Contract with Vendor irrevocably and unconditionally
submits and waives any objection to the jurisdiction of the federal and state
courts located in Westchester County, New York for purposes of any suit,
action or proceeding arising out of or relating to these Terms and Conditions
or the Contract formed between the parties, and agrees to take any and all
future action necessary to submit to the jurisdiction of such courts.

Defendant has submitted evidence that Plaintiff's agent received the invoice, initialed the

bottom, and remitted a check in full payment of the invoice ten months after receipt, thereby

manifesting consent to the Terms and Conditions of Sale and, therefore, the forum selection

clause. (Doc. 10, Ex. A). Plaintiff does not dispute that it paid the invoice, but it disputes

the legal effect of the tender of payment.

Defendant cites to three cases in support of its argument that whether or not Plaintiff

was aware of the Terms and Conditions, by paying the invoice, it bound itself to the terms

referenced in the invoice. *See Schwartz v. Comcast Corp.*, 256 F. App'x 515, 520 (3d Cir.

2007) (holding that a subscription agreement located on the provider's website was binding,

regardless of whether the customer was aware of the terms contained in the agreement and

rejecting the customer's argument that the "contract was too difficult to find" because the

agreement was "available to all . . . subscribers via its website. Under Pennsylvania law,

failure to read a contract does not excuse a party from being bound by its terms.");

*Pentecostal Temple Church v. Streaming Faith, LLC*, Civil Action No. 08-554, 2008 WL

4279842, at *5 (W.D. Pa. Sept. 16, 2008) (relying on *Schwartz*, rejecting "Plaintiff's

assertions that the clause should be disregarded because the Purchase Order incorporated terms and conditions only available on the Defendants' website, and not provided in hard-copy to the Plaintiff" because the "Third Circuit has recently held that a customer on notice of contract terms available on the internet website is bound by those terms."); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 237 (E.D. Pa. 2007) (finding reasonable notice of and mutual assent to the terms contained in the AdWorks contract because "the user here had to . . . click the 'Yes, I agree to the above terms and conditions' button in order to proceed to the next step. . . . If the user did not agree to all of the terms, he could not have activated his account, . . . ").

The Court finds that the forum selection clauses at issue in *Schwartz, Pentecostal*, and *Feldman* were negotiated *before or at the time* the contracts were created and the customer signed an agreement or clicked on a button to manifest assent expressly. Not so here. Here, Plaintiff hired Defendant for an inspection, thereby creating an unwritten contract between the parties that Plaintiff would pay for Defendant's services. (*See* R&R, at 33-34) (concluding that under both Pennsylvania and New York law, the parties entered a contract by conduct when Plaintiff accepted Defendant's rendering of services). *After* the creation of the contract, the undisputed facts indicate Defendant sent an invoice unilaterally attempting to alter the terms of the contract by adding a forum selection clause.

Defendant cites to cases which indicate that Plaintiff subsequently assented to the additional terms when it paid the invoice and its agent initialed the invoice. *See Jordan*

8

*Acquisitions Group LLC v. Adam Technologies, Inc.*, Civ. Action No. 09-542, 2009 WL 2473987, at *5-6 (W.D. Pa. Aug. 12, 2009) (citing *Wilson of Wallingford, Inc. v. Reliable Data Systems, Inc.*, No. 95-6686, 1995 WL 734232 (E.D. Pa. Dec. 5, 1995) (citing *Marek v. Marpan II, Inc.*, 817 F.2d 242, 247 (3d Cir. 1987) (holding that as long as the terms and conditions were reasonably communicative, "[t]he [plaintiff] who omits to read takes the risk of the omission.").

In *Jordan*, the Terms and Conditions were printed on the reverse side of the invoices issued to the plaintiff by the defendant after the plaintiff's purchase of allegedly defective chip carriers. Section 11(a) of Terms and Conditions provided for the resolution of all cases arising out of the transaction in the state or federal court located in the Commonwealth of Massachusetts. The plaintiff there set forth the same arguments that Oak Street advances: the terms were "inconspicuous having been set forth in boilerplate" and Oak Street "did not knowingly or voluntarily consent to the jurisdiction of a [New York] court." *Id*. at *5. However, the court was unpersuaded and found that the plaintiff had not met its heavy burden of proving the invalidity of the forum selection clause. In contrast, Plaintiff relies heavily on *Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d Cir. 2002) in which then-Judge Sotomayor wrote for the Second Circuit: "Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility." *Id*. at 35. Unlike the court in *Jordan*, this Court doubts whether the forum selection clause at

9

issue was reasonably conspicuous and also finds that whether Plaintiff manifested assent to the Terms and Conditions is ambiguous.

It is well-settled that a valid forum selection clause is a "significant factor" to be considered when determining whether a transfer is appropriate. *See Stewart Org., Inc.*, 487 U.S. at 29. Further, if the Court finds that Plaintiff freely contracted to a forum selection clause, then the Court should not defer to a plaintiff's choice of forum. *See Jumara*, 55 F.3d at 880. Because, however, the Court concludes whether Plaintiff unambiguously manifested assent to the forum selection clause is unclear based on the factual allegations asserted by the parties thus far, it cannot yet find that the forum selection clause was valid.[1] And because the validity of the forum selection clause is in doubt, Defendant's preferred forum and choice of law (New York) are not controlling. As such, for the time being, Pennsylvania law will govern in this case.

With these preliminary conclusions in mind, the Court agrees with Judge Blewitt that at this time, the forum selection clause should not be a significant factor in the *Jumara* analysis and that Plaintiff's choice of forum should not be disturbed lightly. Judge Blewitt examined the remaining factors that the *Jumara* court identified as important in a transfer analysis: where the claim arose; the relative convenience to the parties as indicated by their

---

[1] In *Specht*, the district court was able to issue its decision after thorough discovery had taken place and there was an "ample record consisting of affidavits and extensive deposition testimony by each named plaintiff; numerous declarations by counsel and witnesses for the parties; dozens of exhibits; oral argument supplemented by a computer demonstration; and additional briefs following oral argument." Therefore, upon appeal, the Second Circuit concluded a remand for a trial on the facts which supported the district court's legal conclusions was unnecessary. *Id.* at 28 ("In sum, we conclude that the district court properly decided the question of reasonable notice and objective manifestation of assent as a matter of law on the record before it, and we decline defendants' request to remand for a full trial on that question.").

respective physical and financial conditions; the location of witnesses, books and records, to the extent that the witnesses, books, or records may actually be unavailable for trial in one forum; the enforceability of the judgment; practical considerations that could make the trial easier, more expeditious, or less expensive; the relative court congestion in the competing courts; and the interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable law. *Id.* at 882-83.

Defendant takes issue with two of Judge Blewitt's conclusions in particular: (1) his observation that Plaintiff went out of business "because it was forced to close its doors as a result of events from which these claims arise" (R&R, at 35), and (2) his legal conclusion that Plaintiff's payment on the invoice was more likely intended as a means of meeting its initial contractual obligation to pay for services rendered, rather than as an indication of assent to the additional terms contained in the invoice. (R&R, at 34).

The Court agrees with Defendant insofar as Judge Blewitt made findings of fact that have not been stipulated to by the parties or proven by evidence. However, these arguments cut against Defendant because these are only some of the facts in dispute which the Court must resolve before it can grant Defendant's motion in its favor, most significantly, whether Plaintiff's agent's initialing of the invoice manifested assent to the Terms and Conditions referenced therein. Also, for the purposes of this motion, it is not necessary for the Court to decide whose "fault" it is that Plaintiff is no longer in business. In light of Defendant's stipulation that Plaintiff is no longer operational (Doc. 16, at 8), at the moment,

11

the Court finds that it would be more convenient for Plaintiff to have the case decided in the Middle District of Pennsylvania, its choice of forum. Defendant presumably has far greater resources to travel here than Plaintiff would to travel to the Southern District of New York.

Finally, Defendant objects to Judge Blewitt's conclusions regarding the remaining factors of the *Jumara* analysis. To the extent that the parties dispute the location of witnesses, documents, or evidence and whether non-party witnesses will be unavailable at trial, the Court will reiterate that these types of factual disputes preclude the Court from granting Defendant's motion. The burden of proving the need for a transfer is on the moving party, and because of the facts in dispute, Defendant has not met its burden. *See Jumara*, 55 F.3d at 879.

### V. Conclusion

For the foregoing reasons, the Court will adopt Judge Blewitt's R&R. The Court will grant Defendant's Motion to Dismiss Plaintiff's negligence claim but will deny Defendant's Motion to Transfer Case without prejudice. Once a fully developed record has been presented to the Court that would allow it to evaluate fully the criteria set forth in *Jumara*, Defendant may renew its motion. A separate Order follows.

Robert D. Mariani
United States District Judge

12